UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON

CIVIL ACTION NO. 03-196-DLB

ANN PAINTER,                                                                PLAINTIFF

VS.                **MEMORANDUM OPINION AND ORDER**

CAMPBELL COUNTY BOARD OF EDUCATION
AND ROGER, BRADY, SUPERINTENDENT,                DEFENDANTS

*******************************

Plaintiff, a former elementary school principal, commenced this § 1983 action against the Campbell County Board of Education (CCBE) and Superintendent Brady alleging that she was demoted in retaliation for voicing opposition to the proposed closure of her school, in violation of her First and Fourteenth Amendment rights.

This matter is before the Court upon Defendant CCBE's Motion for Summary Judgment. (Doc. # 63). Defendant Brady, in his individual capacity, has also filed a Motion for Summary Judgment. (Doc. # 65). Plaintiff filed responses (Docs. # 68, 69), to which Defendants have submitted their replies (Docs. # 70, 71). Thus, the motions are ripe for review.

I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was employed by the CCBE as principal of A.J. Jolly Elementary School in California, Kentucky for approximately twenty years, until she was demoted by then-Superintendent Roger Brady on April 30, 2003.[1] Following her demotion, Plaintiff was re-

---

[1] Brady tendered his resignation on July 15, 2003, and officially resigned as Superintendent of Schools on September 1, 2003.

assigned to Highland Heights Elementary for the 2003-04 school year as a Title I reading teacher, with a comparable reduction in salary. She did, however, retain her status as a tenured teacher.

The events that led to this lawsuit began in January 2003, when Superintendent Brady informed Plaintiff of his decision to close A.J. Jolly Elementary at the conclusion of the 2002-03 school year and merge it with Alexandria Elementary due to statewide budgetary concerns. Plaintiff opposed the proposal to close A.J. Jolly and merge with Alexandria Elementary before the new school, which would be built in place of Alexandria Elementary, was constructed. Specifically, Plaintiff advocated keeping A.J. Jolly open until the new facility was complete, to minimize the disruption that would be caused by forcing students to change schools twice.

Discovery has revealed that of the several alleged instances[2] of "public speech" undertaken by Plaintiff in opposition to the closing of A.J. Jolly Elementary before the new school was ready, only one can be characterized as constitutionally protected. That speech was a five minute talk given by Plaintiff during a public hearing at A.J. Jolly on February 11, 2003. Defendant Brady was in attendance during that public meeting.

As a result of her vocal opposition to Superintendent Brady's proposal to close A.J. Jolly Elementary, Plaintiff alleges that she was demoted in violation of her First and Fourteenth Amendment rights. According to Defendants, the motivation for Plaintiff's

---

[2] Plaintiff alleges five instances of purportedly protected speech: 1) her 5 minute speech during a public hearing at A.J. Jolly on February 11, 2003; 2) her assembling a fact-finding meeting among members of the site-based decision making (SBDM) council and the community after learning of the closure-merger on January 17, 2003; 3) her relaying of financial and other information from the Central Office to her faculty and staff regarding the reasons for, and impact of, the consolidation; 4) her facilitation of public meetings; and 5) her statements made about the proposed closing of A.J. Jolly that were published in local newspapers.

demotion was her 2002-03 evaluation, which was performed by Superintendent Brady in April, 2003. On that evaluation, Plaintiff received "marginal" or "unsatisfactory" grades on 43 out of the 115 performance criteria. In the section entitled "evaluator's comments", Superintendent Brady made the following comments:

> By your own admission you have violated a state mandate to have the school CSIP [comprehensive school improvement plan] revised by April 1st. You also told your staff to disregard an email outlining the Board policy regarding lesson plans. Additionally you confirmed on two occasions you have not addressed the "next steps" documents from the scholastic review in September. I am extremely concerned with the quality of leadership you are providing in your position. If marked improvement is not observed in the next three weeks your opportunity to return to you present position is in jeopardy. If you wish to discuss my observations or need assistance with these tasks feel free to contact me.

Despite these comments, Superintendent Brady recommended Plaintiff to continue in her current employment. However, when Plaintiff failed to make the required improvement, Superintendent Brady demoted her to a classroom teaching position for the following school year with a comparable reduction in salary.

Pursuant to K.R.S. § 161.765(2), Brady notified Plaintiff of his decision in writing on April 30, 2003, and provided the following reasons for her demotion: (1) failure to revise A.J. Jolly's CSIP in a timely manner; (2) failure to address the "Next Steps" from the scholastic review completed in September 2002; (3) insubordination and lack of respect for direct leadership;[3] (4) failure to make any improvements following her April, 2003

---

[3] After forwarding a copy of an e-mail from Karen Chesser (Director of Curriculum for Campbell County School District) to her staff regarding lesson plans, Plaintiff informed them to "PLEASE disregard everything in this e-mail," and was otherwise unsupportive of CCBE's position and policy on lesson plans. In addition, Plaintiff was unprepared during a meeting called by Superintendent Brady on April 9, 2003 to discuss how A.J. Jolly and Alexandria Elementary could interact to create a seamless entry into the new school, and when Brady re-scheduled the meeting for April 23, 2003, Plaintiff failed to attend.

evaluation;[4] and (5) non-performance of responsibilities.

By letter dated May 9, 2003, Plaintiff informed Superintendent Brady of her intent to contest her demotion, and subsequently on May 13, 2003, sought a written statement of grounds for her demotion. On May 21, 2003, Superintendent Brady responded that the reasons for his action were outlined in the original demotion letter.

An administrative hearing was held on August 5-6, 2003, after which the Board voted on August 13th to unanimously to sustain Superintendent Brady's decision to demote Plaintiff from principal of A.J. Jolly Elementary to classroom teacher. Although Plaintiff had initially appealed the administrative decision to this Court, she subsequently withdrew that challenge.

In her complaint, Plaintiff alleges that: (1) she was demoted in retaliation for voicing opposition to the timing of the proposed A.J. Jolly-Alexandria Elementary merger, in violation of her First Amendment right to free speech, and (2) Defendants' actions constituted an "arbitrary and malicious abuse of power," which violated her substantive due process rights under the Fourteenth Amendment. Plaintiff also appealed the CCBE's final decision, but that claim was subsequently withdrawn after CCBE moved for judgment on the appeal. Plaintiff seeks back pay and benefits, compensatory and punitive damages, injunctive relief (expungement), costs and fees.

---

[4] For example, the CSIP plan had not been approved by the SBDM council, Plaintiff failed to hold formal meetings of the CSIP review committee, and there had been no follow-up to the e-mails regarding the lesson plans.

## II.   ANALYSIS

### A.   Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this initial burden, the non-movant cannot rest on its pleadings, but must show that there is a genuine issue for trial. *Id.* at 324. All evidence and inferences based on evidence must be considered in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio* Corp., 475 U.S. 574, 587 (1986). However, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1427, 1479-80 (6th Cir. 1989).

### B.   Section 1983

Under 42 U.S.C. § 1983, a person who, under color of state law, subjects another person to a deprivation of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States, is liable to the party so injured. In order to sustain a claim under § 1983, a plaintiff must identify a right secured by the United States Constitution and a deprivation of that right by a person acting under color of law. *Russo v. City of Cincinnati,* 953 F.2d 1036, 1042 (6th Cir. 1992). Here, Plaintiff has alleged that her First Amendment right to free speech, and her Fourteenth Amendment substantive due process rights, have been violated by Defendants.

5

### C.  First Amendment Retaliation Framework

The framework for analyzing a First Amendment retaliation case is well-established. To establish the prima facie elements of a First Amendment retaliation claim, a public employee must show that: "(1) she engaged in constitutionally protected speech; (2) she was subjected to adverse action or was deprived of some benefit, and (3) the protected speech was a 'substantial' or a 'motivating factor' in the adverse action." *Brandenburg v. Hous. Auth. of Irvine,* 253 F.3d 891, 897 (6th Cir.2001) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977)).  If the plaintiff satisfies these requirements, "the burden of persuasion shifts to the defendant who must show by a preponderance of the evidence that there were other reasons for the adverse action and that the same adverse action would have resulted even if the plaintiff had not engaged in the protected activity at issue." *Leary v. Daeschner,* 349 F.3d 888, 898 (6th Cir.2003).

As former principal of A.J. Jolly Elementary, Plaintiff qualifies as a public employee. To demonstrate that she was engaging in constitutionally protected speech, Plaintiff must show that: 1) her speech touched on matters of public concern, *Cockrel v. Shelby County Sch. Dist*., 270 F.3d 1036, 1048 (6th Cir. 2001), *cert. denied*, 537 U.S. 813 (2002), and 2) her interest in commenting upon matters of public concern outweighs the interest of CCBE, as an employer, in promoting the efficiency of the public services it performs through its employees. *Pickering v. Bd. of Educ. of Township High Sch. Dist. 205*, 391 U.S. 563, 568 (1968).  Once a public-employee plaintiff has met her burden and established a prima facie case, the burden of persuasion shifts to the defendant, who must show by a preponderance of the evidence that there were other reasons for the adverse action, and that the same adverse action would have resulted even if the plaintiff had not engaged in the protected

activity at issue. *Leary*, 349 F.3d at 898. This is commonly referred to as the "defense of inevitability." *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 US 274 (1977).

In determining whether Plaintiff's speech was constitutionally protected, that is, whether it touched on a matter of public concern, the Court turns to *Connick v. Myers*, 461 U.S. 138 (1983), the seminal case on this issue. In *Connick,* the Supreme Court stated that matters of public concern are those that can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Id.* at 146. Whether a plaintiff's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. *Id.* at 148.

In reviewing the record herein, and consistent with the framework set forth in *Connick*, the Court concludes that Plaintiff's five minute speech on February 11, 2003 during a public hearing relating to the proposed closure-merger of A.J. Jolly did touch on a matter of public concern. The hearing was a public forum and was specifically designed to discuss the proposed closure-merger of the elementary schools in Campbell County schools, a topic of great importance to the local community. Although that speech could also be viewed as relating to Plaintiff's personal interest, such as Plaintiff wanting to retain her position as principle, that does not otherwise preclude a legal finding that the speech relates to a matter of public concern. *See Cockrel v. Shelby County School Dist.*, 270 F.3d 1036,1049-50 (6th Cir. 2001); *Connick*, 461 U.S. at 149; *Vaughn v. Lawrenceburg Power Sys.,* 269 F.3d 703, 716 (6th Cir. 2001) ("[m]ixed questions of private and public concern, where the employee is speaking both as a citizen as well as an employee, can be protected").

However, Plaintiff's other instances of "speech" (*see* footnote 2), because they were

7

unknown to Defendants, cannot serve as the foundation for a finding of constitutionally protected speech. While Defendant Brady was certainly aware of Plaintiff's February 11, 2003 speech, Plaintiff has failed to show that Defendants were aware of the other instances Plaintiff is relying on in support of her case. This lack of knowledge is fatal to Plaintiff's claim on these other alleged instances of "speech" because "the defendant must have known about the protected activity in order for it to have motivated the adverse action." *Thaddeus-X v. Blatter,* 175 F.3d 378, 387 n. 3 (6th Cir.1999); *see also Thompson v. Scheid,* 977 F.2d 1017, 1021 (6th Cir. 1992) ("Even if plaintiff's contact with the FBI could be considered speaking out as a citizen, he cannot claim that he was retaliated against for contacting the FBI because the defendants did not learn of this contact until after he had resigned."), *cert. denied,* 508 U.S. 910 (1993); *Van Huss v. Shoffner,* 81 F.App'x 17, 23 (6th Cir. 2003) ("[K]nowledge is a logical prerequisite to finding that plaintiffs' termination was substantially motivated by their engagement in constitutionally protected activity. After all, a defendant cannot terminate employees due to the exercise of their First Amendment rights in the absence of knowledge that they were doing any such thing.").

Having determined that at least one of Plaintiff's instances of speech touches on matters of public concern, the Court must now weigh her First Amendment interests against Defendants' interest in regulating the speech, to determine if the speech is constitutionally protected. In *Pickering*, 391 U.S. 563, the Supreme Court sought to achieve a balance between a public employee's speech rights on matters of public interest and the government's interest as an employer in maintaining a productive workplace. Therefore, under the balancing test created in *Pickering*, public employee speech, even if touching on matters of public concern, will not be constitutionally protected unless the employee's

interest in speaking on these issues outweighs the interest of the employer in promoting the efficiency of the public services it performs through its employees. *Leary*, 349 F.3d at 897 (quoting *Pickering*, 391 U.S. at 568).

In balancing the parties' respective interests, the Court will consider "whether an employee's comments meaningfully interfere with the performance of her duties, undermine a legitimate goal or mission of the employer, create disharmony among co-workers, impair discipline by superiors, or destroy the relationship of loyalty and trust required of confidential employees." *Williams v. Kentucky*, 24 F.3d 1526, 1536 (6th Cir. 1994), *cert. denied*, 513 U.S. 947 (1994) (*citing Rankin v. McPherson*, 483 U.S. 378, 388 (1987)). Although Defendants bear the burden of justifying Plaintiff's demotion, *id.*, the government is entitled to greater deference when regulating speech as an employer than when it attempts to regulate the speech of the public at large. *See Waters v. Churchill*, 511 U.S. 661, 673 (1994).

CCBE claims that Plaintiff's campaign against the A.J. Jolly-Alexandria Elementary consolidation substantially interfered with the performance of her job responsibilities. In support, it alleges that "Plaintiff has acknowledged [at the administrative hearing] that many of the shortcomings articulated by Superintendent Brady and relied upon by the Board, particularly those related to the state mandated deadlines, resulted from alleged 'time constraints' and/or the distraction of trying to keep A.J. Jolly Elementary open...." Superintendent Brady argues that "it is the exclusive job of the Superintendent to act as executive agent to and professional advisor of the Board," on budgetary and staffing matters. According to Brady, the dissension led by Plaintiff undermined his position and decision-making authority, and "'destroy[ed] the relationship of loyalty and trust required

9

of confidential employees,' namely the building principals [in] whom a superintendent must place enormous confidence...." *See Sharp v. Lindsey*, 285 F.3d 479, 486 (6th Cir. 2002) (considering the defendants' argument that the plaintiff-principal's speech disrupted the close working relationship between superintendent and principal - a relationship on which the effective functioning of the school system depends).

Plaintiff, on the other hand, claims that her speech "did not interfere with the job she was hired to perform or adversely affect the functioning of the workplace, her school." As evidence of this fact, Plaintiff notes that she "never received anything less then great reviews...." Although Plaintiff candidly admitted that her failure to meet certain state-mandated deadlines was due, in large part, to dealing with issues related to the proposed closure-merger, she also argues that many of these transgressions were not brought to light until she began voicing opposition to Superintendent Brady's decision. Furthermore, it is difficult to determine whether the fact that Plaintiff was derelict in some of her responsibilities was attributable to her speech, specifically, or the circumstances attending the proposed consolidation, generally.[5]

---

[5] For instance, Plaintiff testified that "dealing with people on such a sensitive issue [the school closing]...takes up a lot of time." Finally, other than Superintendent Brady's general allegation that Plaintiff's speech strained their working relationship, there is no other evidence that her speech interfered with workplace functioning.

On the balance, it appears that CCBE's and Superintendent Brady's interests in an efficiently operated and harmonious workplace do not outweigh Plaintiff's interests in speaking out against the closure and consolidation of her school, an issue of community-wide concern. Thus, because Plaintiff's speech touched on matters of public concern and because the balancing of interests under *Pickering* weighs in her favor, Plaintiff's speech is constitutionally protected. For all of these reasons, the Court concludes that Plaintiff has satisfied the first of the required *prima facie* elements of her First Amendment retaliation claim

Having concluded that at least some of Plaintiff's speech was constitutionally protected, Plaintiff must show that she was subjected to an adverse action or deprived of some benefit. *Brandenburg*, 253 F.3d at 896 (citation omitted). By being demoted from principal to classroom teacher, Plaintiff has suffered an injury that would chill an ordinary person from continuing to engage in similar speech. *Cockrel*, 270 F.3d at 1055. As a result, Plaintiff has satisfied the second of the three *prima facie* elements of her First Amendment retaliation claim.

To satisfy the final element of her prima facie case, Plaintiff must present sufficient evidence to allow a reasonable fact finder to conclude, by a preponderance of the evidence, that her speech was a 'substantial' or a 'motivating factor' in the Defendants' decision to demote her. The Sixth Circuit has stated that to survive summary judgment, "the nonmoving party may not rely on the mere fact that an adverse employment action followed speech that the employer would have liked to prevent. Rather, the employee must link the speech in question to the defendant's decision to [demote] her." *Bailey v. Floyd County Bd. of Educ.,* 106 F.3d 135, 145 (6th Cir. 1997) (citation omitted).

As detailed more fully above, Superintendent Brady articulated a litany of reasons supporting his decision to remove Plaintiff as principal of A.J. Jolly Elementary in his April 30, 2003 letter. The board relied on those same reasons, as well as the testimony presented at the administrative hearing, in sustaining Superintendent Brady's recommendation. Plaintiff counters with evidence of the temporal proximity between her speech and subsequent demotion. She also argues that, during her tenure as an educational administrator, she consistently received excellent reviews, and any lapses in job performance had previously been overlooked.

Plaintiff has failed to create a genuine issue of material fact that her five minute speech on February 11, 2003 was a motivating factor for her demotion. Although Plaintiff's case is relatively close because of the fairly short passage of time between her February 11, 2003 speech and Superintendent Brady's April 30, 2003 letter and her demotion in August, 2003, that temporal proximity, given the record in this case, is insufficient to withstand summary judgment. *See Farmer v. Cleveland Pub. Power,* 295 F.3d 593, 602 (6th Cir. 2002); *Bailey,* 106 F.3d at 145.

In making its decision on Plaintiff's First Amendment claim, it is noteworthy that Superintendent Brady subsequently withdrew his merger proposal, and on February 24, 2003, less than two weeks after Plaintiff's speech at A.J. Jolly, recommended to the CCBE that A.J. Jolly remain open until the new school was constructed. That result was the very position Plaintiff was espousing during her speech. Because Plaintiff has failed to generate a genuine issue of material fact that Defendant acted in retaliation for her speech, Defendants are entitled to summary judgment on Plaintiff's First Amendment claim.

### D. Fourteenth Amendment Substantive Due Process Claim

The Due Process Clause prohibits any state from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV. In her complaint, Plaintiff claims that Defendants' actions constituted an "arbitrary and malicious abuse of power," which violated her substantive due process rights under the Fourteenth Amendment.

It is well settled that public employees, however, do not enjoy a substantive due process right in public employment. *Sutton v. Cleveland Bd. of Educ.,* 958 F.2d 1339, 1351 (6th Cir.1992). In discussing substantive due process in an employment context, the Sixth Circuit in *Sutton* stated:

> Although *[Charles v.] Baesler*, [910 F.2d 1349 (6th Cir. 1990)] did not conclude that all state-created contract rights lack substantive due process protection, and specifically left unanswered the question whether substantive due process may protect a contract right to keep a tenured job, we are persuaded by the reasoning of *Baesler* that plaintiffs' statutory right to be discharged only for cause is not a fundamental interest protected by substantive due process.

*Id.* at 1351.

The substantive component of the due process clause imposes certain limitations on governmental deprivations of life, liberty, or property, independent of the procedural limitations imposed on such deprivations by procedural due process. *See Pearson v. City of Grand Blanc,* 961 F.2d 1211, 1216 (6th Cir. 1992). The Sixth Circuit has recognized that "[o]ne aspect of substantive due process is the right to be free of 'arbitrary and capricious' action by government actors." *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003) (quoting *Pearson,* 961 F.2d at 1217). The limitations of substantive due process apply both to the legislative actions of governments and the executive actions of governments. *County*

*of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998). However, the criteria for determining whether a government action is arbitrary in violation of substantive due process "differ depending on whether it is legislation or a specific act of a governmental officer that is at issue" *Id.* When an action by an executive government official is at issue, as in this case with the actions of Superintendent Brady and the CCBE, the action will be found to violate substantive due process "only when it 'can properly be characterized as arbitrary, or conscious shocking, in a constitutional sense.' " *Id.* at 847 (quoting *Collins v. Harker Heights,* 503 U.S. 115, 128 (1992)). "[O]nly the most egregious official conduct" violates substantive due process under this standard. *Id.* at 846.

      Under this standard, the facts of this case as outlined above do not meet the shocks the conscience test, even when all inferences are drawn in favor of Plaintiff. Moreover, the actions of the Defendants in demoting Plaintiff from principle to classroom teacher did not constitute an "arbitrary and malicious abuse of power" as alleged by Plaintiff. Plaintiff's demotion was consistent with K.R.S. § 161.765(2) in all respects and in no way violated Plaintiff's Fourteenth Amendment substantive due process rights. Because Plaintiff has failed to establish a genuine issue of material fact on her substantive due process claim, summary judgment is granted on that claim.

      In view of the granting of summary judgment for Defendants, the Court declines to address Defendant Brady's "cat's paw" theory that he is not liable in his individual capacity because he took no final employment action against Plaintiff. The Court also finds it unnecessary to address Defendant Brady's qualified immunity argument and CCBE's Eleventh Amendment immunity argument.

      Therefore, for the reasons stated herein,

**IT IS ORDERED as follows:**

1. Defendant CCBE's Motion for Summary Judgment (Doc. # 63) be, and is hereby **granted**;

2. Defendant Brady's Motion for Summary Judgment (Doc. # 65) be, and is hereby **granted**;

3. This matter is hereby **stricken** from the docket of the Court;

4. A Judgment in favor of Defendants will be entered contemporaneously herewith.

This 1st day of March, 2006.



Signed By:
*David L. Bunning* DB
United States District Judge

G:\DATA\Opinions\2-03-196-MSJ.wpd